IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HERNDON BOROUGH JACKSON TOWNSHIP JOINT MUNICIPAL AUTHORITY | : : : : : | |
| Plaintiff, | : : | Case No. 4:12-cv-01116 |
| v. | : : | |
| PENTAIR PUMP GROUP, INC. t/d/b/a MYERS PUMP COMPANY and MID ATLANTIC PUMP AND EQUIPMENT COMPANY | : : : : : | (Judge Brann) |
| Defendants, | : : | |
| v. | : : | |
| LARSON DESIGN GROUP, INC. | : : | |
| Third Party Defendant. | : | |

# **MEMORANDUM**
May 8, 2015

Third Party Defendant Larson Design Group, Inc. ("Larson") has filed a Motion to Strike Defendant Pentair Pump Group, Inc. t/d/b/a/ Myer Pump Company's ("Pentair") Third Party Complaint pursuant to Rule 14(a)(4) of the Federal Rules of Civil Procedure or, in the alternative, to Dismiss the Third Party Complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (ECF No. 49).  Pentair's

1

Third Party Complaint, as amended on September 8, 2014, alleges a single count for contribution and/or indemnification against Larson for Negligent Misrepresentation of a Professional Design.  (ECF No. 46).

Larson seeks to strike or dismiss Pentair's Third Party Complaint in its entirety.  (ECF No. 49).  This Court retains diversity jurisdiction pursuant to 28 U.S.C. § 1332.  Consequently, Pennsylvania substantive law applies.  E.g., Erie R.R. Co. v. Tompkins, 304 U.S. 64, 91-92 (1938).  For the reasons discussed below, Larson's Motions will be denied.

## I. BACKGROUND

On February 22, 2012, Plaintiff Herndon Borough Jackson Township Joint Municipal Authority ("Herndon Borough") filed a complaint against Defendants in the Court of Common Pleas of Northumberland County, Pennsylvania.  See (ECF No. 1).  Herndon Borough moves wastewater through various pump-stations, including Pump-Station Number 2 (the "Pump-Station").  Id.  The Defendants supplied parts for the Pump-Station, and Pentair provided the water pump used in the Pump-Station.  Id.  Herndon Borough alleges, *inter alia*, that Pentair installed inferior parts in the water pump, resulting in Herndon Borough incurring significant damages.  Id.  On June 12, 2012, Defendants removed the action to this Court based on diversity of citizenship.  Id.

On July 16, 2014, Pentair filed a Third Party Complaint against Larson, which was subsequently amended on September 8, 2014. (ECF Nos. 35, 46). Pentair alleges that "the design of the sewage treatment plant . . . and not any alleged defects in the pumps, caused the alleged defects in the grinder pumps[.]" (ECF No. 46 ¶ 8). Specifically Pentair alleges that Larson, the design firm employed by Herndon Borough, negligently designed the Pump-Station. Id. at ¶¶ 11, 17. This negligent design led the pumps to fail. Id. at ¶¶ 13-17. Furthermore, Larson allegedly failed to communicate these design flaws to third parties that relied on Larson's representations. Id. at ¶¶ 23-24. As a result, Pentair alleges that, if judgment is entered against it, then Larson is "liable over to Pentair by way of contribution and indemnity." Id. at ¶ 18.

Larson has filed its Motion to Strike, claiming that Pentair essentially argues Larson is solely liable to Herndon Borough, and therefore has failed to state a proper claim under Rule 14. (ECF No. 49). Furthermore, Larson argues that Pentair has failed to set forth viable claims for contribution or indemnification. Id. In the alternative, Larson seeks dismissal of the third-party complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted. Id.

## II. DISCUSSION

    A.    **Motion to Strike Under Rule 14(a)(4)**

Rule 14 of the Federal Rules of Civil Procedure broadly provides that "a defending party may, as a third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Conversely, where a third party complaint is improperly brought, any party may move to strike it. Fed. R. Civ. P. 14(a)(4). "In general, whether a particular third-party defendant may be impleaded is a question which 'rests with the sound discretion of the trial court.'" State Coll. Area Sch. Dist. v. Royal Bank of Can., 825 F.Supp.2d 573, 379 (M.D. Pa. 2011) (quoting Hartford Casualty Ins. Co. v. ACC Meat Co., 2011 WL 398087, at *1 (M.D. Pa. Feb. 2, 2011)).

"Where . . . state substantive law recognizes a right of contribution and/or indemnity, impleader under Rule 14 is the proper procedure by which to assert such claims." In re One Meridian Plaza Litig., 820 F.Supp. 1492, 1496 (E.D. Pa. 1993) (citing Smith v. Whitmore, 270 F.2d 741 (3d Cir.1959); Pennine Res., Inc. v. Dorwart Andrew & Co., 639 F.Supp. 1071 (E.D. Pa. 1986)). However, a "third-party complaint may not set forth a claim that the third party defendant is directly liable to the original plaintiff; it is limited to claims of secondary or derivative liability." Id. Rule 14 is procedural in nature, and a party's substantive rights must derive from state law. Garcia v. Cummings, 1:07-cv-1886, 2009 WL 136785, at *2 (M.D. Pa. Jan. 20, 2009).

4

Larson first argues that Pentair alleges sole liability from Larson to Herndon Borough, rather than secondarily liable to Pentair.  (ECF No. 52, pp. 7-9).  While Pentair's Third Party Complaint can be read as arguing primary liability on the part of Larson, this is not the only permissible reading of the Third Party Complaint.  Although it is not a model of clarity, Pentair's complaint does allege that Larson is secondarily liable to Pentair.  Reading Pentair's Third Party Complaint liberally, it alleges that, in the event that Pentair is found to have created a defective product, Larson's negligent design contributed significantly to the pump's failure and, ultimately, to Herndon Borough's damages.  This would constitute a joint tort, and therefore Larson would be liable to Pentair because Pentair would have paid in excess of its fair share of the total losses.

Thus, as Pentair plainly states, "[i]f judgment . . . is entered against Pentair, then Larson is liable over to Pentair by way of contribution and indemnity." Id. at ¶ 18.  Based on the Court's reading of Pentair's Third Party Complaint, Pentair has sufficiently alleged liability from Larson to Pentair, and therefore striking the Third Party Complaint on that basis is not appropriate.

   *1. Contribution*

Larson next argues that Pentair has not stated a claim for contribution.  (ECF no. 52).  Contribution is only allowed under Pennsylvania law for torts; thus, Pentair's claim for contribution may only rest on the tort claim under products

liability. See (ECF No. 52) (citing Castle Cheese, Inc. v. MS Produce, Inc., 04-cv-878, 2008 WL 4372856, at *42 (W.D. Pa. Sept. 19, 2008)). The Pennsylvania Uniform Contribution Among Tortfeasors Act (the "Uniform Act") provides for a right of contribution among joint tortfeasors. 42 Pa.C.S.A. § 8324(a). "Joint tortfeasors are defined as 'two or more persons jointly or severally liable in tort for the same injury to persons or property[.]'" Mattia v. Sears, Roebuck & Co., 366 Pa.Super. 504, 507 (1987) (quoting 42 Pa.C.S.A. § 8322)). "Two actors are jointly liable for an injury if their conduct 'causes a single harm which cannot be apportioned . . . even though [the actors] may have acted independently.'" Id. (quoting Capone v. Donovan, 332 Pa.Super. 185, 189 (1984)).

"The focus of the Uniform Act is on the relationship existing between tortfeasors rather than the manner in which several tortfeasors have been held liable to an injured claimant[.]" Smith v. Weissenfels, Inc., 441 Pa. Super. 328, 337 (1995) (quoting Svetz v. Land Tool Co., 355 Pa. Super. 230, 238 (1986)). As the Supreme Court of Pennsylvania has noted, "contribution is not a recovery for the tort [committed against the plaintiff,] but the enforcement of an equitable duty to share liability for the wrong done." Puller v. Puller, 380 Pa. 219, 221 (1955). The Pennsylvania Superior Court further expounded that:

> a tortfeasor's right to receive contribution from a joint tortfeasor derives not from his liability to the claimant but rather from the equitable principle that once the joint liability of several tortfeasors has been determined, it would be unfair to impose the financial burden

6

>of the plaintiff's loss on one tortfeasor to the exclusion of the other. It matters not on which theory a tortfeasor has been held responsible for the tort committed against the plaintiff. So long as the party seeking contribution has paid in excess of his or her share of liability, it would be inequitable under the [Uniform] Act to deny that party's right to contribution from a second tortfeasor who also contributed to the plaintiff's injury.

Svetz, 355 Pa. Super. at 238.

Larson argues that, in a products liability case, contribution is not available outside the chain of distribution. (ECF No. 52, p. 11). However, the Uniform Act "'may properly be applied to effectuate contribution among joint tortfeasors where one tortfeasor is adjudged liable of negligence and the other liable under the concepts of strict products liability[.]'" Smith, 441 Pa. Super. at 337 (quoting Moran v. G. & W.H. Corson, Inc., 402 Pa.Super. 101, 107-09 (1991)).

Therefore, contrary to Larson's argument, liability may be apportioned through contribution amongst joint tortfeasors where one is held liable under a products liability theory and another may be liable for negligence. For example, in Smith the plaintiff sued the defendant for allegedly producing a defective chain; this chain broke when plaintiff was moving a heavy object, causing physical injuries. 441 Pa. Super. at 331. The defendant sought contribution from a third party, the trucking company that advised the plaintiff that the chain was "adequate for the task" of moving the object. Id. Despite the fact that the third party

defendant was held liable only under a negligence theory, the Pennsylvania Superior Court affirmed the contribution award. Id. at 337.

Similarly in Svetz, the plaintiff sued defendant under a theory of products liability, alleging that defendant had produced a defective motorcycle helmet. 355 Pa. Super. at 233. The decedent had been driving his motorcycle when he crashed; upon impact, his motorcycle helmet split, causing head injuries that resulted in his death. Id. The defendant sought contribution from a third party who had allegedly served alcoholic beverages to the decedent while he was visibly intoxicated. Id. The Pennsylvania Superior Court concluded that, despite the fact that defendant was liable under a products liability theory and the third party defendant was liable based on a separate negligent act, both acts combined to cause a single harm. Id. at 237-42. Therefore, despite the fact that both acts were distinct, when they combined to create unified harm, contribution was allowed. Id.

Although Pentair is being sued under a products liability theory, and Larson does not appear to be within the chain of distribution, contribution is allowable under Pennsylvania law. If Pentair is found liable, it will be because its pump was in some way defective. Because Pentair alleges that Larson's negligent design of the Pump-Station combined with Pentair's tort to create a unified, more extensive harm, Larson may properly be held liable for contribution. See Smith, 441 Pa. Super. at 337; Svetz, 355 Pa. Super. at 237.

### *2. Indemnity*

Next, Larson argues that Pentair has not stated a claim for indemnity or, in the alternative, that any claim for indemnity is not yet ripe. (ECF No. 52). In Pennsylvania, indemnity is only available "(1) where primary versus secondary or vicarious liability is present or (2) where there is an express contract to indemnify." Nat'l R.R. Passenger Corp. v. URS Corp., 528 F.Supp.2d 525, 532 (E.D. Pa. 2007) (internal quotation marks omitted) (quoting Richardson v. John F. Kennedy Mem'l Hosp., 838 F.Supp. 979, 989 (E.D. Pa. 1993)). The Supreme Court of Pennsylvania has set forth the law relating to indemnity:

> The right of indemnity rests upon a difference between the primary and the secondary liability of two persons each of whom is made responsible by the law to an injured party. It is a right which enures to a person who, without active fault on his own part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable. The difference between primary and secondary liability is not based on a difference in degrees of negligence or on any doctrine of comparative negligence . . . It depends on a difference in the character or kind of the wrongs which cause the injury and in the nature of the legal obligation owed by each of the wrongdoers to the injured person . . .
>
> [T]he important point to be noted in all the cases is that secondary as distinguished from primary liability rests upon a fault that is imputed or constructive only, being based on some legal relation between the parties, or arising from some positive rule of common or statutory law or because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of the one primarily responsible. In the case of concurrent or joint tortfeasors, having no legal relation to one another, each of them owing the same duty to the injured party, and involved in an accident in which the injury occurs,

9

> there is complete unanimity among the authorities everywhere that no right of indemnity exists on behalf of either against the other; in such a case, there is only a common liability and not a secondary one, even though one may have been very much more negligent than the other.

Builders Supply Co. v. McCabe, 366 Pa. 322, 325-28 (1951). See also, Kemper Nat'l P & C Cos. v. Smith, 419 Pa.Super. 295, 299–300 (1992).

Evaluated under this standard, Pentair has sufficiently alleged a cause for indemnity under the circumstances. As discussed previously, one reading of Pentair's Third Party Complaint is an allegation that, if Pentair is found liable, then Larson is a joint tortfeasor who contributed to the harm visited upon Herndon Borough. In such circumstances "no right of indemnity exists[.]" Builders Supply Co., 366 Pa. at 328. However, a thorough reading of the Third Party Complaint evidences a second claim.

Pentair has alleged that Larson negligently misrepresented the design of the Pump-Station, and Pentair justifiably relied on that incorrect and inaccurate information. (ECF. No. 46, ¶ 21). Based on that reliance, among other things, Pentair provided a pump "that used single phase pump motors" despite the fact that the Pump-Station employed "a three-phase 100 amp circuit breaker[.]" Id. These facts are sufficient to establish that Larson's initial negligence created Pentair's secondary liability. Under this reading of the Third Party Complaint, absent Larson's initial negligence, Pentair's equipment would have operated as expected,

and no liability could have been imputed to Pentair. Therefore, Pentair has sufficiently pled a cause of action for indemnity.[1]

### B. Motion to Dismiss Under Rule 12(b)(6)

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must view all allegations stated in the complaint as true and construe all inferences in the light most favorable to plaintiff. Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). However, "the tenet that a court must accept as true all of the [factual] allegations contained in the complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. At the motion to dismiss stage, the court considers whether the plaintiff is entitled to offer evidence to support its allegations. Maio v. Aetna, Inc., 221 F.3d 472, 482 (3d Cir. 2000).

A complaint should only be dismissed if, accepting as true all of the allegations in the amended complaint, the plaintiff has not pled enough facts to

---

[1] Larson has also argued that any claim for indemnity is not yet ripe, since Pennsylvania law allows for indemnity claims only after a party has been found liable for damages. (ECF No. 52, p. 14) (citing TDY Indus. v. Nat'l Freight Transp., Inc., 2009 WL 691947, at *12 n. 9 (W.D. Pa. March 12, 2009). However, the Court agrees with my colleague, Judge John E. Jones III's assessment in Tulpehocken Spring Water, Inc. v. Obrist Americas, Inc. of the ripeness doctrine as applied to Pennsylvania indemnity law. 4:09-cv-2189, 2010 WL 5093101, at *4-5 (M.D. Pa. Dec. 8, 2010). There, Judge Jones concluded that, in the interests of judicial economy, courts may allow joinder for indemnity even though the claim is not yet ripe. Id. Consequently, Pentair may assert its claim for indemnity, despite the fact that it is not strictly ripe as of yet.

state a claim to relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 561 (2007). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 663-64.

Rule 8 of the Federal Rules of Civil Procedure "requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds on which it rests[.]'" Twombly, 550 U.S. at 554 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, even under this lower notice pleading standard, a plaintiff must make a factual showing of entitlement to relief by alleging sufficient facts that, when taken as true, suggest the required elements of a particular legal theory. See Twombly, 550 U.S. at 561. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "shown" – "that the pleader is entitled to relief." Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)). A court may dismiss a claim under Rule 12(b)(6) where there is a "dispositive issue of law." Neitzke v. Williams, 490 U.S. 319, 326 (1989).

   *1. Negligent Misrepresentation*

Here, Pentair alleges that Larson is liable only under a theory of negligent misrepresentation. (ECF No. 46). In Pennsylvania, "[n]egligent misrepresentation

requires proof of: (1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation." Bilt-Rite Contractors, Inc. v. The Architectural Studio, 581 Pa. 454, 466 (2005).

Pentair's Third Party Complaint alleges sufficient facts to satisfy this standard. First, Pentair alleges that Larson misrepresented numerous material facts, including the necessity of a wastebasket screen/filter for the Pump-Station, the necessity for frequent changing of cutters and shredding rings, and inconsistent requirements in the circuit breakers and the pump motors. (ECF No. 46, ¶ 21). Second, Pentair alleges that these misrepresentations directly contradict various professional standards. Id. at ¶ 15. Thus, Larson should have known of the falsity of the statements. Third, the information supplied by Larson "was intended for the benefit and guidance of" others. Id. at ¶ 23. Finally, Pentair alleges that it "justifiably relied on" the misrepresentations, leading to the possible damages resulting from this case. Id. at ¶ 24. These facts and allegations, when taken as true, form a *prima facie* case for negligent misrepresentation.

### 2. *Economic Loss Doctrine*

Larson argues that, notwithstanding any potential *prima facie* case for negligent misrepresentation, the Third Party Complaint should be dismissed based

13

on the economic loss doctrine. (ECF No. 52). Specifically, Larson contends that no exception to this doctrine applies in this situation. Id. Pentair in turn argues that their claim against Larson fits directly within an exception to the doctrine. (ECF No. 54).

The economic loss doctrine provides that "no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage." Adams v. Copper Beach Townhome Communities, L.P., 816 A.2d 301, 305 (Pa. Super. 2003) (citing Spivack v. Berks Ridge Corp., 402 Pa. Super. 73 (1991); Aikens v. Balt. & Ohio R.R. Co., 348 Pa.Super. 17 (1985)). However, the Supreme Court of Pennsylvania in Bilt-Rite carved out a narrow exception to this doctrine when it explicitly adopted Section 552 of the Restatement (Second) of Torts. 581 Pa. at 479. Section 552 states that:

> One who, in the course of his business, profession or employment, or in any other transaction in which he was a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

RESTATEMENT (SECOND) OF TORTS § 552 (1977).

In such circumstances, the economic loss doctrine does not bar recovery for the tort of negligent misrepresentation. Bilt-Rite, 581 Pa. at 479. As the court explained, recovery is permissible only in "cases where [1] information is

negligently supplied by one in the business of supplying information, such as an architect or design professional, and [2] where it is foreseeable that the information will be used and relied upon by third persons, even if the third parties have no direct contractual relationship with the supplier of information." Id. at 482.  The court noted that defendants are "liable only to those, whether in contractual privity or not, for whose benefit and guidance the information is supplied[,]" whether directly or indirectly.  Id. at 481 (quoting John Martin Co., Inc. v. Morse/Diesel, Inc., 819 S.W.2d 428, 431-32 (Tenn. 1991).  Liability is imputed "to only those whose use of the information is reasonably foreseeable."  Id.

     Although the court's holding was narrowed somewhat by the procedural posture of the case, the Bilt-Rite holding is applicable here.  In the Third Party Complaint, Pentair alleged that the information supplied by Larson "was intended for the benefit and guidance of" third parties, including Pentair.  (ECF No. 46, ¶ 23).  Taken as true, this language sufficiently alleges that Larson understood it was "foreseeable that the information [would] be used and relied upon by third persons[.]"  Bilt-Rite, 581 Pa. at 482.  Second, Larson clearly qualifies as a design profession "in the business of supplying information[.]"  Id.  Finally, Pentair alleged several instances of Larson supplying, either by commission or omission, negligent information such as recommending the use of a three-phase 100 amp

circuit breaker, but inconsistently calling for the installation of single-phase pump motors in the pump grinders. (ECF No. 26, ¶ 21).

Taken together, Pentair has alleged sufficient facts to meet the <u>Bilt-Rite</u> exception to the economic loss doctrine. Consequently, Larson's Motion to Dismiss the Third Party Complaint must be denied.

### **III. CONCLUSION**

A review of the Third Party Complaint reveals that Pentair has stated a proper claim under Rule 14 of the Federal Rules of Civil Procedure. Furthermore, when viewed under the federal pleading standards, Pentair has alleged sufficient facts to state a claim for relief that is plausible on its face. Therefore, Larson's Motion to Strike Under Rule 14(a)(4) or, in the alternative, to Dismiss under Rule 12(b)(6), is denied.

An appropriate Order will follow.

BY THE COURT:

<u>/s Matthew W. Brann</u>
Matthew W. Brann
United States District Judge